UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JESSE TULLIES,

                Movant

v.

UNITED STATES OF AMERICA,

                Respondent

Civil No. 23-3378 (JXN)
Criminal No. 18-21 (KM)

---

**ANSWER TO MOTION UNDER 28 U.S.C. § 2255**

---

**PHILIP R. SELLINGER**
**United States Attorney**

**ELAINE K. LOU**
**Assistant U.S. Attorney**
**970 Broad Street,**
**Suite 700**
**Newark, New Jersey 07102**
**(973) 645-2747**

# **Table of Contents**

**Page**

Table of Authorities ........................................................................ ii

Index of Exhibits ........................................................................... vi

INTRODUCTION ............................................................................ 1

FACTUAL BACKGROUND ............................................................ 2

LEGAL ARGUMENT ...................................................................... 10

I.      LEGAL STANDARD ............................................................. 11

II.     TULLIES RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL BEFORE
        AND AT TRIAL. ................................................................... 12

        A.      Choosing to Call Dina Blackwell and Not to Call the Defense
                Investigator as Witnesses Was Reasonable Trial Strategy. ............ 14

        B.      Murphy Was Not Ineffective for Failing to Raise a Meritless
                Objection to Agent Havens's Expert Testimony. ......................... 16

        C.      Tullies Has Not Shown that Introducing His Phone Records Would
                Have Led to a Different Result. ................................................. 18

        D.      The Allegedly "Missing" Jencks Act Material Did Not Exist, and
                Murphy's Failure to Request It Was Not Ineffective. .................... 19

        E.      There Was No Cumulative Error. ............................................. 20

III.    TULLIES IS NOT ENTITLED TO AN EVIDENTIARY HEARING, AND THIS
        COURT SHOULD DECLINE TO ISSUE ANY CERTIFICATE OF
        APPEALABILITY. .................................................................. 21

CONCLUSION ............................................................................... 22

# Table of Authorities

**Page(s)**

## Cases

*Alexander v. United States*,
No. 1:14-cr-240-1, 2019 WL 4273863 (M.D. Pa. Sept. 10, 2019)................. 20

*Babbitt v. Calderon*,
151 F.3d 1170 (9th Cir. 1998).................................................... 13

*Bousley v. United States*,
523 U.S. 614 (1998).................................................................. 11

*Brown v. Lawler*,
Civil Action No. 09-2565, 2016 WL 6033231 (E.D. Pa. Oct. 13, 2016)......... 16

*Brown v. United States*,
75 F. Supp. 2d 345 (D.N.J. 1999)................................................. 13

*Buehl* v. *Vaughn*,
166 F.3d 163 (3d Cir. 1999) ...................................................... 13

*DiModica v. United States*,
Civ. No. 00-1272 (KSH), 2007 WL 2212853 (D.N.J. July 31, 2007) ............ 17

*Duronio v. United States*,
Civil Action No. 10-1574 (JLL), 2012 WL 78201 (D.N.J. Jan. 10, 2012). 16, 19

*Gov't of the Virgin Islands* v. *Nicholas*,
759 F.2d 1073 (3d Cir. 1985) ..................................................... 13

*Gov't of the Virgin Islands v. Forte*,
865 F.2d 59 (3d Cir. 1989) ....................................................... 21

*Harrington v. Richter*,
562 U.S. 86 (2011)................................................................. 14

*Hill v. United States*,
368 U.S. 424 (1962)................................................................ 11

*Hodge v. United States*,

554 F.3d 372 (3d Cir. 2009) ........................................................................... 12

*Jones v. Stotts,*
  59 F.3d 143 (10th Cir. 1995) .................................................................... 20

*Kimmelman v. Morrison,*
  477 U.S. 365 (1986) .................................................................................. 13

*Murray v. Carrier,*
  477 U.S. 478 (1986) .................................................................................. 12

*Palmer v. Hendricks,*
  592 F.3d 386 (3d Cir. 2010) ..................................................................... 12

*Parks v. Sheahan,*
  104 F. Supp. 3d 271 (E.D.N.Y. 2015) ..................................................... 18

*Philson v. Barbo,*
  77 F. App'x 123 (3d Cir. 2003) ................................................................ 16

*Reinert v. Larkin,*
  211 F. Supp. 2d 589 (E.D. Pa. 2002) ...................................................... 16

*Sanders v. Trickey,*
  875 F.2d 205 (8th Cir. 1989) .................................................................... 16

*Slack v. McDaniel,*
  529 U.S. 473 (2000) .................................................................................. 22

*Strickland* v. *Washington,*
  466 U.S. 668 (1984) ..........................................................12, 13, 14, 19

*United States States v. Gargulo,*
  324 F.2d 795 (2d Cir. 1963) ..................................................................... 16

*United States v. Addonizio,*
  442 U.S. 178 (1979) .................................................................................. 11

*United States v. Essig,*
  10 F.3d 968 (3d Cir. 1993) ....................................................................... 12

*United States v. Fernandez,*
  795 F. App'x 153 (3d Cir. 2020) .............................................................. 17

iii

*United States v. Frady,*
    456 U.S. 152 (1982) ................................................................ 11, 12

*United States v. Gray,*
    878 F.2d 702 (3d Cir. 1989) ....................................................... 16

*United States v. Powell,*
    444 F. App'x 517 (3d Cir. 2011) ................................................ 20

*United States v. Rehaif,*
    588 U.S. ___, 139 S. Ct. 2191 (2019) ........................................ 9

*United States v. Rivera,*
    900 F.2d 1462 (10th Cir. 1990) ................................................. 20

*United States v. Sanders,*
    165 F.3d 248 (3d Cir. 1999) ................................................. 13, 18

*United States v. Thomas,*
    221 F.3d 430 (3d Cir. 2000) ....................................................... 21

*United States v. Tullies*, Nos. 19-2957,
    2022 U.S. App. LEXIS 3655 (3d Cir. Feb. 10, 2022) ................. 2, 9

*United States v. Watson,*
    260 F.3d 301 (3d Cir. 2001) ....................................................... 17

*United States v. Winkelman,*
    548 F. Sup. 2d 142 (M.D. Pa. 2008) ......................................... 18

*United States v. Womack,*
    55 F.4th 219 (3d Cir. 2022) ....................................................... 17

*Zettlemoyer v. Fulcomer,*
    923 F.2d 284 (3d Cir. 1991) ....................................................... 21

**Statutes**

18 U.S.C. § 922(g)(1) ..................................................................... 1

18 U.S.C. § 924(c)(1)(A) ................................................................ 1

21 U.S.C. § 846 ............................................................................. 1

21 U.S.C. §§ 841(a)(1) ............................................................... 1

28 U.S.C. § 2255............................................................ 1, 9, 11, 21

**Rules**

Federal Rules of Criminal Procedure 29......................................... 8

**<u>Index of Exhibits</u>**

Exhibit A:   Transcript of Trial, dated June 6 through June 8, 2018, Crim. 18-
             21 (KM)

**INTRODUCTION**

Movant Jesse Tullies ("Tullies") has moved to vacate, set aside or correct his sentence pursuant to Title 28, United States Code, Section 2255 (the "Motion"). Civ. Dkt. #1. The Motion should be denied without a hearing and no certificate of appealability should issue because, as explained below, Tullies's claims are meritless.

Following a three-day trial where Tullies was tried with co-defendant Eugene Williams ("Williams") (collectively, "Defendants"), Defendants were convicted of the following charges:

- Conspiracy to distribute and possess with intent to distribute heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846;

- Distribution and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

- Possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

- Illegal possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and

- Using and carrying firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

The Court sentenced Tullies to a term of imprisonment of 175 months for the three narcotics counts, a term of imprisonment of 60 months for the § 922(g)(1) count to run concurrently to the narcotics counts, and a term of imprisonment of 60 months for the § 924(c) count to run consecutively to all other counts, for

a total term of 235 months.   Crim. Dkt. #104.

Tullies appealed, and the Third Circuit affirmed his convictions.   *United States v. Tullies*, Nos. 19-2957, 2022 U.S. App. LEXIS 3655, 2022 WL 413945 (3d Cir. Feb. 10, 2022).

Tullies's motion now challenges his convictions, raising five separate claims that his trial counsel, James R. Murphy, Esq., provided ineffective counsel, and that the cumulative effect of counsel's failures establishes prejudice.   Each of those claims fails.

Tullies's counsel provided effective assistance in accordance with the *Strickland* test.   Tullies suffered no prejudice from his representation. Because Tullies's claims are so obviously without merit, they can be dismissed on the papers.   No hearing is necessary, and no certificate of appealability should issue.

## FACTUAL BACKGROUND

At trial, Detective Yusef Ellis of the Essex County Sheriff's Office ("ECSO") testified that on October 4, 2017, at approximately 1:00 p.m., he was conducting surveillance in the area of Weequahic Avenue and Clinton Place in Newark, New Jersey.   Ex. A at 149:9-150:3.   Detective Ellis established an unobstructed view of that intersection and observed three individuals, including Tullies and his co-defendant Williams, standing on the corner.   Ex. A at 150:23-158:20.

Detective Ellis then observed a green Honda Civic, driven by an

2

individual later identified as John Potts ("Potts"), pull up in front of Tullies and Williams.   Ex. A at 160:17-20.   Detective Ellis observed Tullies approach the passenger side door of the Honda Civic and engage in a brief conversation with Potts.   Ex. A at 160:23-161:19.   Potts then also engaged in a brief conversation with Williams.   Ex. A at 161:19-21.   Detective Ellis then watched Williams cross the street and proceed to walk down the driveway of 249-51 Weequahic Avenue.   Ex. A at 161:25-162:2.   Williams then reached under the rear bumper of a black Chevrolet Lumina that was parked in the driveway. Ex. A at 163:25-164:6.   Detective Ellis testified that Williams retrieved a clear plastic bag from which he gathered items before replacing the clear plastic bag under the rear bumper.   Ex. A at 164:6-9.   Detective Ellis then watched Williams return to where Tullies was standing and hand Tullies the items he retrieved from the clear plastic bag, which appeared to Detective Ellis to be glassine folds of suspected narcotics.   Ex. A at 166:3-9, 17-20.   Tullies then handed the items to Potts in exchange for cash.   Ex. A at 166:8-9; 167:6-15. Tullies then placed the cash into his pocket.   Ex. A at 167:3-4.   At this point, Potts drove away.   Ex. A at 167:3-4; 170:19-21.

Detective Ellis testified that moments later he observed an unidentified individual approach Tullies and engage him in a brief conversation.   Ex. A at 170:22-171:1.   Detective Ellis watched Tullies walk across the street to the same driveway that Williams had just visited.   Ex. A at 171:6-22.   Detective Ellis saw Tullies go to the same location as Williams and reach under the

3

bumper of the same black Chevrolet Lumina.   Ex. A at 171:23-172:3.   Tullies retrieved a clear plastic bag from which he gathered items before replacing the clear plastic bag under the rear bumper.   Ex. A at 172:4-16.   Detective Ellis watched Tullies return to where the unidentified individual was waiting and saw him hand her the items he had retrieved from the clear plastic bag in exchange for cash.   Ex. A at 173:16-174:20.   Detective Ellis could see that the items were glassine folds of suspected narcotics.   Ex. A at 174:8, 10.   Tullies then placed the cash into his front pants pocket.   Ex. A at 174:21-24.   The buyer walked away.   Ex. A at 174:23-24.   At this point, Detective Ellis testified that he put out a description of Potts and the unidentified female via radio to fellow ECSO officers in the area.   Ex. A at 175:13-176:11.

ECSO Detective Anthony Docke testified that he heard the description from Detective Ellis over the radio and spotted the Honda Civic driven by Potts nearby.   Ex. A at 304:6-24.   Detective Docke and his partner then conducted a motor vehicle stop of the Honda Civic.   Ex. A at 305:19-306:12.   Detective Docke testified that during the motor vehicle stop, Potts handed over two glassine envelopes containing suspected heroin to the officers.   Ex. A at 309:9-310:2.   The glassine envelopes were stamped "Black Jack."   Ex. A at 310:4-20.   Detective Docke testified that he then informed fellow officers via radio that he had recovered suspected narcotics from Potts.   Ex. A at 310:24-311:2.

Detective Ellis testified that officers then approached Tullies and Williams and placed them under arrest.   Ex. A at 177:4-178:11.   ECSO

4

Detective Ozie Ryals testified that at the time of their arrest, Tullies was in possession of approximately $1,275 in cash, and Williams was in possession of approximately $360 in cash – including 30 one-dollar bills. Ex. A at 256:10-258:15. Detectives Ryals and Docke testified that they then searched under the bumper of the Chevrolet Lumina from which Tullies and Williams had each retrieved items and recovered the following:

    a.    approximately 198 glassine envelopes containing suspected heroin packaged for distribution, including glassine envelopes stamped "Black Jack," matching the glassine envelopes seized from Potts;

    b.    approximately 22 plastic bags containing cocaine base packaged for distribution;[1]

    c.    a Taurus PT111 G2, 9mm handgun, bearing serial number TGU47186, loaded with 12 hollow-point rounds;

    d.    a Beretta BU9 Nano, 9mm handgun, bearing serial number NU068181, loaded with two rounds, which handgun was later determined to have been stolen; and

    e.    a FEG PA-63 Makarov, 9mm handgun, bearing serial number AG0726, loaded with 4 hollow point rounds.

Ex. A at 236:5-252:10; Ex. A at 313:12-3:18-25.

Special Agent Angel Casanova of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified as an expert in firearms identification, the interstate origin of firearms, and the operability of firearms. Ex. A at 339:8-12. Agent Casanova testified that, in his expert opinion, the three firearms

---

[1] The parties stipulated at trial that chemical analysis of the drug evidence confirmed the presence of heroin and cocaine base. Ex. A at 370:14-372:18.

recovered in this matter were operable and that each traveled in interstate commerce before being recovered in New Jersey on October 4, 2017.   Ex. A at 344:4-350:25.

Special Agent John Havens of the Federal Bureau of Investigation testified as an expert regarding the methods used by street-level drug dealers to conduct street-level drug business to include the distribution, packaging, pricing, and storage of the drugs.   Ex. A at 382:19-15.   Agent Havens was also qualified as an expert regarding the use of firearms by street-level drug dealers in furtherance of their trade.   Ex. A at 382:19-15.   Agent Havens testified that street-level drug dealers typically package and distribute heroin and cocaine base in individual dosage units like the drug evidence recovered in the case.   Ex. A at 388:15-20.   Agent Havens also testified that heroin dealers mark their heroin with brand stamps like the "Black Jack" stamps found on the heroin recovered from Potts and from under the rear bumper of the Chevrolet Lumina.   Ex. A at 392:13-22.   Agent Havens testified that because heroin could sell for approximately $3 to $4 per dose,[2] he would expect a drug dealer to carry a large amount of cash and small bills – just like Defendants did in this case.   Ex. A at 397:17-398:1.   Agent Havens also testified that street-level drug dealers prefer not to carry drugs on them and use a nearby stash location to hide their product.   Ex. A at 398:17-400:5.   Finally, Agent Havens

---

[2] Agent Havens also testified that a dose of cocaine base would sell for approximately $5 to $8 on the streets of Newark in October 2017.   Ex. A at 390:25.

6

testified that firearms are essential tools of the drug trade for securing and maintaining turf, ensuring payment, and protecting against robbery.   Ex. A at 402:1-4.   Moreover, Agent Havens explained that firearms are sometimes, as in this case, kept with the hidden drug stash.   Ex. A at 403:3-11.

After the Government rested, Tullies called his friends and members of his family, including his fiancée Dina Blackwell ("Blackwell"), his daughter Leanna Travers, and Travers's friend Stephanie Davis, to testify that he was not engaged in drug dealing on October 4, 2017 as described by Detective Ellis, because he was in the area with $1,275 in cash to put a down payment on an apartment with Blackwell and to give to his daughter to buy work shoes.   Ex. A at 435-450; 479-495.   On cross-examination, the Government established evidence that the defense witnesses were biased and, more importantly, not physically present at the time that the alleged drug deals took place.   Ex. A at 440-43; 447-450; 482-84; 490-95.

Williams called Potts to testify that he had bought heroin in the vicinity of 249-51 Weequahic Avenue on October 4, 2017, but from two other unidentified individuals, not from Tullies or Williams.   Ex. A at 452:2-453:9; 455:8-15.   On cross-examination, Potts initially testified that he had not spoken to any of Tullies's or Williams's friends or family before testifying.   Ex. A at 457:12-20.   Potts later admitted that he had been untruthful earlier during cross-examination because he had, in fact, spoken to Tullies's friends and family, including Blackwell, multiple times before testifying.   Ex. A at

470:9-16.   Potts elaborated that he spoke to Tullies's friends and family after
they approached him at his state court appearances.   Ex. A at 470:17-474:7.
He also admitted that he had not told anyone he bought heroin from the two
unidentified persons until after those conversations and until after he pleaded
guilty for purchasing heroin on October 4, 2017.   Ex. A at 474:8-24.

## PROCEDURAL BACKGROUND

Based on this evidence, on June 8, 2018, Tullies and Williams were
convicted at trial of all seven counts of the Indictment charging them with one
count of conspiracy to distribute and possess with intent to distribute heroin,
one count of distribution and possession with intent to distribute heroin, one
count of possession with intent to distribute cocaine base, one count each of
possessing firearms as convicted felons,[3] and one count each of using and
carrying firearms in furtherance of a drug trafficking crime.

Tullies was represented before and at trial by James R. Murphy, Esq.,
who was retained.

Following trial, both Tullies and Williams moved for a judgment of
acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29
and 33, respectively, which motions were denied.   The Court found that there
was sufficient evidence to support the jury's guilty verdict.   Crim. Dkt. #80.

Tullies and Williams, represented by new counsel, also filed second

---

[3] The evidence of Tullies's and Williams's prior convictions was presented
by way of joint stipulation in a bifurcated phase.   Ex. A at 634:15-635:23.

motions for a new trial based on the Supreme Court's decision in *United States v. Rehaif*, 588 U.S. ___, 139 S. Ct. 2191 (2019), which the Court denied on the record at their sentencing hearings.   On August 19, 2019, the Court sentenced Tullies to a term of imprisonment of 175 months for the three narcotics counts, a term of imprisonment of 60 months for the § 922(g)(1) count to run concurrently to the narcotics counts, and a term of imprisonment of 60 months for the § 924(c) count to run consecutively to all other counts, for a total term of 235 months.   Crim. Dkt. #104.

On August 23, 2019, Tullies filed a notice of appeal.   Crim. Dkt. #106. In his appeal, he renewed his *Rehaif* claim and also argued that the Government improperly questioned Potts about the timing of his claims that he bought drugs from others and thereby implicitly commented on Tullies's right to remain silent, in violation of the Fifth Amendment.   *Tullies*, 2022 WL 413945, at *2.   The Third Circuit denied both claims and affirmed.   *Id.*   The Third Circuit held that there was no error, plain or otherwise, in allowing the Government to elicit "relevant impeachment testimony" from Potts, which was unrelated to Tullies's initial silence, especially with the Court's curative instructions.   *Id.*

On May 2, 2023, Tullies filed the instant Motion for post-conviction relief under 28 U.S.C. § 2255.   Civ. Dkt. #1.

On October 10, 2023, the Government was ordered to answer Tullies's Motion.   Civ. Dkt. #3.

## **LEGAL ARGUMENT**

Tullies raises five grounds that Murphy was ineffective, including that:

- Murphy should not have called Blackwell to the stand knowing that she would "provide[ ] at most some negligible benefit to Tullies" but that "the overall impact of [her] testimony would be devastating to the defense (Ground 1, Mot. at 19);

- Murphy "fail[ed] to bolster [Blackwell's] credibility by calling the much-discussed defense investigator that counsel claimed was with her when she saw the witness John Potts at municipal court" (Ground 2, Mot. at 22);

- Murphy did not object when Agent Havens "express[ed] his opinion that the facts of this very case fit the pattern of drug dealing and illegal gun possession" and "improperly referred to the defendants'[ ] intent to sell illegal drugs" (Ground 3, Mot. at 26-27);

- Murphy failed to use Tullies's phone records to impeach Detective Ellis's testimony (Ground 4, Mot. at 29-31); and

- Murphy "fail[ed] to obtain the audio file of [Detective] Ellis pursuant to the Jencks Act" (Ground 5, Mot. at 34).

Tullies also claims that the cumulative effect of Murphy's ineffective assistance amounted to prejudice.   (Ground 6, Mot. at 34).

As set forth more fully below, the Court should deny the Motion without a hearing because Tullies's ineffective assistance claims are without merit. First, as to Grounds 1 and 2, trial counsel's decision to call certain witnesses and not others was part of a reasonable trial strategy.   Second, Agent Havens testified as to indicia of drug dealing, methods used by drug dealers, including that firearms are tools of their trade, several reasons why drug traffickers would possess firearms, and ways in which drug traffickers would store or

maintain those firearms.   He had no familiarity with either Defendant and no knowledge of or role in their arrests or the events leading up to their arrests. Third, the introduction of Tullies's phone records would not have, as he claims, led to a different result.   And his self-serving and unsupported conclusion in this regard does not entitle him to relief.   Finally, as both Detectives Ellis and Ryals testified, their radio communications regarding Detective Ellis's observations were on a "direct" channel and therefore not recorded; Murphy therefore cannot have been deficient for failing to request that which did not exist.   Accordingly, Tullies cannot establish that the result would have been any different with supposedly more effective counsel.   He has suffered no prejudice as a result of Murphy's representation.

## I.    LEGAL STANDARD

The grounds for collateral attack under § 2255 are limited.   *See United States v. Addonizio*, 442 U.S. 178, 184 (1979).   Absent constitutional or jurisdictional error or a sentence exceeding the statutory maximum, a § 2255 motion will be granted only for "a fundamental defect which inherently results in a complete miscarriage of justice."   *Hill v. United States*, 368 U.S. 424, 428 (1962).

Several important limitations on § 2255 relief are particularly applicable in this case.   First, § 2255 relief is no substitute for a direct appeal.   *See United States v. Frady*, 456 U.S. 152, 165 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621–22 (1998).   Accordingly, a defendant whose § 2255

11

motion raises a claim he failed to raise on appeal must show both "cause" for that failure and "actual prejudice" resulting from the claimed error.   *Frady*, 456 U.S. at 167–68; *see United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). In addition, the Third Circuit has "repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition."   *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citations omitted).

## II.     TULLIES RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL BEFORE AND AT TRIAL.

Tullies claims he was denied his Constitutional right to effective assistance of counsel before and at trial as set forth above.   These ineffectiveness claims are cognizable under § 2255 only if they rise to the level of a Sixth Amendment violation.   *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009).   Tullies can't meet that standard.

Every ineffective assistance of counsel claim must satisfy a two-part test. *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984).   First, the movant must show that counsel's performance was deficient, in that counsel made errors so serious that he failed to function as the "counsel" guaranteed by the Sixth Amendment.   Second, the movant must show prejudice, in the form of deprivation of as fair trial.   Failure to satisfy either prong means the claim must be rejected.   *Id.* at 697.   As with any other claim under § 2255, the

movant bears the burden of proving ineffective assistance of counsel.  *Gov't of the Virgin Islands* v. *Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

The standard that defendant must meet is both "rigorous" and "highly demanding," and requires a showing of "gross incompetence" on counsel's part. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).   An attorney's performance is not ineffective if it was "reasonable[] under prevailing professional norms."  *Strickland*, 466 U.S. at 688.   Courts strongly presume that counsel rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment.  *Id.* at 689; *Buehl* v. *Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999); *Brown v. United States*, 75 F. Supp. 2d 345, 348–50 (D.N.J. 1999), *aff'd* 45 F. App'x 92 (3d Cir. 2002). The objective reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman*, 477 U.S. at 381; *Strickland*, 466 U.S. at 690.   The test is "not whether another lawyer, with the benefit of hindsight, would have acted differently," or "what defense counsel could have pursued."  *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (internal quotation marks and citation omitted).   In addition, counsel cannot be ineffective for refusing to "raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

As for prejudice, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal

13

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted). It is "not enough" to show that counsel's errors had some conceivable effect on the outcome; rather counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Tullies cannot satisfy either prong. Each of Tullies's claims that counsel was ineffective suffer from one of the following flaws:

- within reasonable trial strategy (Grounds 1 and 2); and

- no basis in fact, *i.e.*, counsel's performance was not deficient in the way Tullies claims (Grounds 3, 4, and 5).

Therefore, Tullies falls far short of the showing required by § 2255.

### A.  Choosing to Call Dina Blackwell and Not to Call the Defense Investigator as Witnesses Was Reasonable Trial Strategy.

Tullies alleges that "the overall impact of Blackwell's testimony would be devastating to the defense," (Ground 1, Mot. at 19), and that Murphy was incompetent for calling her. Specifically, he states that Blackwell's testimony "did not match up with [Tullies's] daughter Leanna Travers, (Mot. at 18), but more importantly that her testimony on cross-examination "could only lead the jury to conclude that Tullies was trying to manipulate Potts to provide

14

untruthful testimony to aid the defense."   (Mot. at 19).   Tullies alleges in the alternative that counsel was incompetent when he failed to call the defense investigator to bolster Blackwell's credibility and confirm that she did not place undue pressure on Potts to testify a certain way.   (Ground 2, Mot. at 22-25). However, as detailed above, that Potts did not come forward with the alternate identification until being approached by Blackwell was elicited not during Blackwell's cross-examination, but during *Potts's* cross-examination.   Ex. A 470:9-474:24.   The Government asked the jury during summation to draw the inference that Potts was pressured based not just on Blackwell's willingness to do anything for her fiancé, including to approach Potts, Ex. A at 518:5-19, but also on the timing of Potts's silence until after he met with Blackwell.   Ex. A at 520:10-12.   Not only is Tullies's claim that the investigator would have testified that "Blackwell did not put any pressure on Potts," (Mot. at 23), or "that Blackwell was there but she did not participate in the conversation with the key defense witness," (Mot. at 25), pure conjecture, it is not supported by the evidence.   Blackwell corroborated Potts that the two spoke, and Tullies has put forth no sworn affidavit or other contemporaneous, reliable statement that the investigator would contradict either defense witness's testimony.

   Tullies has not overcome the strong presumption that Murphy's decision to call Blackwell or to not call the investigator was within sound trial strategy. Third Circuit courts have held that trial "counsel's decision to not call certain witnesses is a 'trial strategy,' which should be afforded 'appropriate deference.'"

15

*Brown v. Lawler*, Civil Action No. 09-2565, 2016 WL 6033231, at *5 (E.D. Pa. Oct. 13, 2016) (quoting *Philson v. Barbo*, 77 F. App'x 123, 127 (3d Cir. 2003)) (denying *Strickland* claim where Petitioner "provided no facts to support his assertions); *Reinert v. Larkin*, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002) ("The decision of whether or not to call a particular witness is a matter open to differences of opinion." (citing *Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989); *United States States v. Gargulo*, 324 F.2d 795, 797 (2d Cir. 1963)).

Nor can Tullies show prejudice.   Even if counsel was ineffective in calling Blackwell or not calling the investigator, given Potts's admissions, Tullies has not shown that a different tactic "would have, with reasonable certainty, produced a different result."   *Id.* (internal citations omitted); *see also Duronio v. United States*, Civil Action No. 10-1574 (JLL), 2012 WL 78201, at *12 (D.N.J. Jan. 10, 2012) ("Petitioner here fails to make a claim or showing that but for [counsel's] actions . . . the trial would have resulted differently." (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989))).   Because Tullies's claims on Grounds 1 and 2 fail at every turn, the Motion should be denied.

### B.    Murphy Was Not Ineffective for Failing to Raise a Meritless Objection to Agent Havens's Expert Testimony.

Murphy was also not ineffective when he chose not to object to Agent Havens's expert testimony, because Agent Havens did not, contrary to what Tullies now claims, testify impermissibly as to Defendants' intent to sell illegal drugs.   (*See* Ground 3, Mot. at 25-29).   Tullies himself "concedes that the

16

operations of drug dealers has been deemed a proper field of expertise." (Mot. at 27). The Third Circuit has observed that the expert testimony of an experienced narcotics agent "is often helpful in assisting the trier of fact understand the evidence." *United States v. Watson*, 260 F.3d 301, 307 (3d Cir. 2001) (internal citations omitted); *accord United States v. Fernandez*, 795 F. App'x 153, 155-56 (3d Cir. 2020). Specifically, it "is well-established that government agents may testify . . . about the significance of certain conduct or methods of operation to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *Watson*, 260 F.3d at 307; *accord United States v. Womack*, 55 F.4th 219, 228-29 (3d Cir. 2022). That's exactly what Agent Havens did. He did not "testify that he was there on October 4th, 2017, or observed anything . . . having to do with this case." Ex. A at 383:3-7. Accordingly, he did not direct and could not have directed the jury to find the "ultimate question" of whether Defendants knowingly distributed drugs and used and carried firearms in furtherance of a drug trafficking crime. The jury had the benefit of Agent Havens's testimony to draw its own conclusion as to whether, in light of the other law enforcement officers' personal observations on October 4, 2017, Defendants did so.

The Sixth Amendment does not require anything further. *See, e.g.*, *DiModica v. United States*, Civ. No. 00-1272 (KSH), 2007 WL 2212853, at *8 (D.N.J. July 31, 2007) (denying § 2255 motion alleging a Sixth Amendment violation of the right to effective assistance because "attorney's decision not to

17

object . . . comport[ed] with proper advocacy informed by counsel's understanding of the law").   Counsel is not ineffective for failing to raise a meritless objection.   *Sanders*, 165 F.3d at 253.   That classic form of second-guessing does not indicate ineffectiveness.   *See Parks v. Sheahan*, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) ("The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance." (internal citations omitted)).

And Tullies cannot show prejudice, because the outcome would not have been any different even had Murphy objected.   That's because, as set forth above, nothing about Agent Havens's testimony was improper.   *See, e.g.*, *United States v. Winkelman*, 548 F. Sup. 2d 142, 150 (M.D. Pa. 2008).

### C.   Tullies Has Not Shown that Introducing His Phone Records Would Have Led to a Different Result.

Tullies claims that his phone records from the day of his arrest show that he was on the phone at the time of the alleged drug transactions that Detective Ellis observed, and that, because Detective Ellis did not testify at any point that Tullies was on the phone, he was "surely prejudiced" when counsel failed to introduce those records.   (Ground 4, Mot. at 30-31).   Notwithstanding that the phone records are an unverified printout with no certificate of authenticity or other affidavit from a custodian of records, those phone records do not aid Tullies.   Contrary to Tullies's assertion now that "he simply was not where the government's witnesses said he was during the critical time of the events at

18

bar," (Mot. at 30-31), his own defense witnesses conceded that he was at the scene of his own arrest, in the area of Weequahic Avenue and Clinton Place. Ex. A at 435-450, 479-495.   Instead, they provided alternative, innocent explanations for his presence there.   Given his arrest minutes after Detective Ellis's observations that he had engaged in what appeared to be hand-to-hand narcotics transactions and accessed the narcotics stash under the Chevrolet Lumina's bumper, Tullies had no other choice; he could not claim that he was elsewhere.

Against that backdrop, it is not evident what, if any, difference it would have made for Tullies to establish that he was on the phone.   Where a petitioner fails to argue "that the outcome of the trial would have otherwise resulted differently[,] . . . the Court need not determine whether counsel's performance was constitutionally deficient."   *Duronio*, 2012 WL 78201, at *16 (citing *Strickland*, 466 U.S. at 697).   Consequently, this claim likewise fails.

### D.    The Allegedly "Missing" Jencks Act Material Did Not Exist, and Murphy's Failure to Request It Was Not Ineffective.

Tullies claims that Murphy was ineffective because he did not identify and request certain "missing" Jencks Act material, *i.e.*, Detective Ellis's radio communications regarding his observations and descriptions of Potts and the other individual whom he believed had engaged in hand-to-hand narcotics transactions with Defendants.   (Ground 5, Mot. at 33).   However, as both Detectives Ellis and Ryals testified, those radio communications were not

19

recorded.  Ex. A at 157:16-20, 218:2-5, 289:14-24.   The contents of those radio communications therefore could not have been requested or provided to counsel.

Moreover, even had such radio transmissions been recorded, Tullies cannot show that counsel's failure to request them amounted to prejudice. Tullies makes no claim that the recordings somehow contradict Detective Ellis's sworn testimony as to his observations and communications with the other officers.   *See, e.g.*, *Alexander v. United States*, No. 1:14-cr-240-1, 2019 WL 4273863, at *7 (M.D. Pa. Sept. 10, 2019) (denying as "meritless" Petitioner's claim that counsel failed to provide "Jencks material in a timely fashion" where "Petitioner failed to specify what Jencks Act violations allegedly occurred and how he was prejudiced by those alleged violations" (internal citations omitted)).

### E.    There Was No Cumulative Error.

Finally, Tullies contends that all these errors amounted to cumulative error (Ground 6, Mot. at 34-35).   That's wrong, because he failed to establish that Murphy was ineffective in any specific way.   Because "zero plus zero equals zero," his claims, either singly or cumulatively, must fail.   *United States v. Powell*, 444 F. App'x 517, 522 (3d Cir. 2011) (not precedential); *see also Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) ("Based on our determination that none of the issues raised by Mr. Jones could be considered error, the cumulative error analysis does not apply." (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990))).

Murphy did not prejudice Tullies.   He did the best he could to negate the evidence proving Tullies's guilt.

### III.    TULLIES IS NOT ENTITLED TO AN EVIDENTIARY HEARING, AND THIS COURT SHOULD DECLINE TO ISSUE ANY CERTIFICATE OF APPEALABILITY.

For all of these reasons, Tullies has not given this Court any basis for using its discretion to order an evidentiary hearing.   *See Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).   When, as here, "the motion and file and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255, no hearing is needed.   Tullies's motion rests on, at best, "vague and conclusory allegations" and can be disposed of without further inquiry.   *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *see Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) ("bald assertions and conclusory allegations do not provide sufficient ground to . . . require an evidentiary hearing").

And for essentially the same reasons, this Court should decline to issue a certificate of appealability.   No reasonable jurist would disagree with the rejection of Tullies's *Strickland* claims.

21

## **CONCLUSION**

This Court should deny Tullies's Section 2255 Motion without a hearing. Furthermore, because Tullies has not made a substantial showing that he was denied a constitutional right, this Court should find that a certificate of appealability should not issue.   *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: _____
Elaine K. Lou
Assistant U.S. Attorney

DATED:     Newark, New Jersey
                    January 4, 2024

22